IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| ADRIANA WHEELER<br>8024 S.W. 4TH STREET<br>BLUE SPRINGS, MO 64014 | )<br>)<br>)<br>) | 14-0712-CV- 6 |
| Plaintiff, | )<br>) | |
| v. | )<br>) | Case No. _____ |
| ALLIANT TECHSYSTEMS, INC, &/or<br>ALLIANT TECHSYSTEMS OPERATION LLC,<br>&/OR ATK SMALL CALIBER SYSTEMS<br>**SERVE REGISTERED AGENT**:<br>    CT Corporation System<br>    129 South Central Avenue<br>    Clayton, MO 63105 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| Defendant. | ) | |

## COMPLAINT

COMES NOW Plaintiff Adriana Wheeler, and for her Complaint against Defendants Alliant Techsystems, Inc., and/or Alliant Techsystems Operation LLC, and/or ATK Small Caliber Systems (hereafter collectively "ATK or Defendant"), for age and sex discrimination and retaliation in violation of Title VII, states and alleges as follows:

### PARTIES

1.  Plaintiff Adriana Wheeler is an individual residing in the State of Missouri, at 8024 S.W. 4th Street, Blue Springs, Missouri 64014. Plaintiff was born on June 8, 1966.

2.  Defendant ATK is an aerospace, defense and commercial products company with its headquarters in Arlington, Virginia. ATK operates the federal Lake City Ammunition Plant in Independence (hereafter "Lake City plant") which has more than 2,400 employees. ATK manufactures small caliber ammunition for the United States Army.

3. All of the acts, conduct and omissions of Defendant were performed by their agents, representatives and employees while in the course and scope of their agency or employment.

## JURISDICTION AND VENUE

4. This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. § 2000e-5(f)(3), and 29 U.S.C. § 2617, as the acts complained of involve violations of Plaintiff's rights under federal law, specifically the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 *et seq.* (Section 1981), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* (Title VII).

5. Venue is proper within this District pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5 because a substantial part of the events giving rise to Plaintiff's claims occurred in the District, the unlawful employment practices are alleged to have been committed in this District, and the Defendant ATK has sufficient minimum contacts with this District so as to be considered a resident in Missouri for the purposes of the federal venue statute.

## BACKGROUND FACTS AND EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. Plaintiff has been employed by Defendant beginning on or about August 16, 2010. She was originally hired as a Quality Inspector in the Case area, and was trained to work in the following departments: Quality, CCMES Operations, and Simulator Room. Plaintiff is a 48 year old female.

7. During the course of her employment with the Defendant, Plaintiff has always performed at or above the standards expected of Defendant's employees.

8. In October 2011, Plaintiff applied for and received a promotion to become an Op Technician ("Op Tech"), which required her to pass the Bentley Mechanical Aptitude Test.

9. The Op Tech position is the highest non-management position at Defendant's plant. With satisfactory performance and time on the job an employee can progress through three Op Tech job levels, starting with entry-level C, followed by B, and then the highest level A.

10. In October 2012, Plaintiff was promoted to Op Tech level B, which paid a higher salary than level C. If Plaintiff had been allowed to perform her job without discrimination, she would have been eligible for promotion, and would have received a promotion to the top-level A in or about October 2013.

11. In April 2013, after more than a year and a half of satisfactory performance as an Op Tech, and a seven (7) month assignment to the new start-up Cold Heading/Penetrators area, Plaintiff was assigned back to the Case area, and placed under the supervision of Josh Wilson, age 32, a former co-worker who had been recently promoted to Supervisor.

12. Wilson had approximately 35 Op Techs under his supervision, three of whom were women. Plaintiff was the only woman on her assigned line.

13. Wilson immediately began treating Plaintiff far more harshly than he did her younger, male colleagues. Plaintiff was singled out by Wilson to be re-evaluated on a previous training matrix she had successfully completed back in October 2011. Plaintiff is not aware of Wilson doing this with any of the younger, male Op Techs.

14. After meeting with Wilson about her ability to pass the matrix again, he told Plaintiff, "So basically all you can do is push a broom." This was a very sexist, demeaning and degrading comment.

15. Plaintiff reported this incident to the ATK Corporate Ethics Committee, and was assured it would be investigated.

16. Days after the ethics complaint was made, Wilson re-assigned Plaintiff to a different line in a Cupfeed Operations position, came out to the line and started quizzing only Plaintiff on the various components of the Cupfeed line, which she had learned to operate back in October 2011.

17. Because everyone communicated with headsets and Wilson was speaking with Plaintiff on an open microphone, all the other techs on the line heard Plaintiff being quizzed, which was very humiliating and demeaning. Plaintiff is not aware of Wilson ever quizzing younger, male Op Techs on the line in front of all their coworkers.

18. On May 3, 2013, Plaintiff was called into HR to discuss her ethics complaint and was asked if she believed Wilson's behavior was sexist, and if so, what she wanted them to do about it. Plaintiff replied that she did believe it was a sexist comment, and that Defendant should follow its zero tolerance policy against sexual harassment, and take whatever action was required to enforce the policy.

19. During the meeting with HR, it appeared to Plaintiff as if the HR representatives were not taking her report seriously, and minimized the severity of her complaint and how it affected her on the job.

20. On May 11, 2013, Plaintiff was working on a line when an emergency shutdown occurred. Wilson came out onto the line and accused Plaintiff of causing the shutdown. Plaintiff was accused of using a certain oil on a Cupfeed machine, which she knew not to do, and did not do. The oil Wilson saw by the machine was there when Plaintiff arrived on the job that morning. Wilson told Plaintiff this was unacceptable work performance, and sent her to the Packing department for the remainder of the weekend. This incident was very upsetting to Plaintiff and made her feel sick to her stomach, so she went to the on-site medical area for treatment.

Plaintiff's blood pressure was so high [A it was 11/8/15.] that the paramedic on duty told her she should leave work, go home and rest. THIS RESULTED IN INITIATING AN FMLA CLAIM FOR ABSENCES INCURRED DUE TO ILLNESSES AND DOCTOR VISITS.

21. When Plaintiff returned to the Case area on May 24, 2013, Wilson assigned her to a different line, in the Simulator Room. Later that morning, she was quizzed again by Wilson and another supervisor about her ability to work the Cupfeed Operations. Even though Plaintiff answered all of their questions and demonstrated her ability to operate the line, Wilson told her to again report to the Packing department for the remainder of the day. Later that day, Plaintiff was given a Disqualification Letter revoking her certification as an Op Tech, claiming that she could not complete the multiple tasks required to remain an Op Tech.

22. On May 30, 2013, Defendant's HR department informed Plaintiff that she was reassigned to a non-Op Tech position, and was required to change work shifts from weekend days to weeknights. This resulted in a demotion, with a significant loss of pay and job duties and responsibilities. It also made Plaintiff vulnerable to any future layoffs or work slowdowns. When Plaintiff asked about the pending ethics complaint, she was told the investigation was closed. Plaintiff accepted the reassignment because she needed the work and pay. As a result of the demotion, Plaintiff was humiliated and suffered a substantial loss of pay and benefits.

23. When an Op Tech position later became available in the Penetrators area, Plaintiff was not eligible to be reassigned to that position because Defendant had revoked her Certification. If not for the Defendant's discriminatory and retaliatory actions, Plaintiff would have been eligible to apply for this position that she previously held, and would have received an increase in pay.

24. The true reason for the Defendant's demotion of Plaintiff is because of her sex, age and in retaliation for reporting Defendant's unlawful discrimination practices.

5

25. On or about October 4, 2013, Plaintiff filed a Charge of Discrimination against Defendant with the Missouri Commission on Human Rights ("MCHR") and the Equal Employment Opportunity Commission ("EEOC"), alleging claims of age and sex discrimination and retaliation against Defendant. (Attached as Exhibit 1.)

26. On or about May 16, 2014, the EEOC issued its Notice of Right to Sue to Plaintiff. (Attached as Exhibit 2.)

27. This lawsuit was filed within 90 days of the EEOC's issuance of its Notice of Right to Sue to Plaintiff.

28. Plaintiff has met all deadlines and has satisfied all procedural, administrative, and judicial prerequisites to filing suit.

## COUNT I - SEX DISCRIMINATION

29. Plaintiff incorporates by reference the allegations of paragraphs 1 through 28 above.

30. Defendant intentionally discriminated against Plaintiff on the basis of her sex in the terms and conditions of her employment, including, but not limited to, by treating her differently than male employees, by failing to take prompt and appropriate corrective actions to remedy their conduct that Plaintiff reported to Defendant was unlawful because of Plaintiff's sex, by creating and maintaining a hostile work environment based upon sex, by denying her promotions, by demoting her to a non-Op Tech position for which she was qualified, and revoking her certification as an Op Tech.

31. Plaintiff's sex was a contributing and/or motivating factor in Defendant's unfair and discriminatory treatment of Plaintiff in the terms and conditions of her employment.

32. Defendant failed to make good faith efforts to enforce policies to prevent discrimination and retaliation against their employees, including Plaintiff.

33. As a direct and proximate result of Defendant's illegal discriminatory actions, Plaintiff has suffered actual damages in the form of lost wages, loss of earning capacity, loss of career opportunity, pain and suffering, mental anguish, "garden-variety" emotional distress, loss of enjoyment of life, humiliation, upset and other emotional distress, damage to her reputation, diminished job opportunities, and in other respects, all in an amount yet to be determined.

34. Defendant's conduct was willful, wanton and malicious, and showed complete indifference to or conscious disregard for the rights of Plaintiff under Title VII, thus justifying an award of punitive damages in an amount sufficient to punish the Defendant and to deter them from like conduct in the future.

35. Plaintiff has already incurred and will incur in the future substantial attorney's fees and expenses in prosecuting this action, which fees and expenses are recoverable from Defendant under Title VII.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant and requests an award of her actual damages as is fair and reasonable, in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00), including but not limited to her lost wages and benefits, with interest through the date of trial, damages for "garden-variety" emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, loss of self-esteem, humiliation and other non-pecuniary losses, damages for future loss of wages, punitive damages, all costs including reasonable attorneys' fees, equitable relief as appropriate, including but not limited to a injunction restraining Defendant from future discriminatory actions, and any such other relief as the Court deems just and proper.

## COUNT II - AGE DISCRIMINATION

36. Plaintiff incorporates by reference the allegations of paragraphs 1 through 35 above.

37. Defendant intentionally discriminated against Plaintiff on the basis of her age in the terms and conditions of her employment, including, but not limited to, by treating Plaintiff differently than younger employees, by failing to take prompt and appropriate corrective actions to remedy their conduct that Plaintiff reported to Defendant was unlawful because of her age, by creating and maintaining a hostile work environment based upon age, by denying her promotions, by demoting her to a non-Op Tech position for which she was qualified, and revoking her certification as an Op Tech.

38. Defendant manifested its illegal age bias through their actions and statements including but not limited to their denying her promotions, demoting her, and revoking her certification while similarly situated, substantially younger employees were treated more favorably.

39. Defendant knew, or should have known, of the age discrimination against Plaintiff.

40. Defendant failed to take prompt and appropriate corrective action to end the age discrimination against Plaintiff.

41. Plaintiff's age was a contributing and/or motivating factor in Defendant's decision to take adverse employment actions against her in the terms and conditions of her employment.

42. Defendant's actions and conduct were outrageous and done with malice, evil motive or with reckless indifference to Plaintiff's rights under Title VII.

43. As a direct and proximate result of Defendant's illegal discriminatory actions, Plaintiff has suffered actual damages in the form of lost wages, loss of earning capacity, loss of career opportunity, pain and suffering, mental anguish, "garden-variety" emotional distress, loss of enjoyment of life, humiliation, upset and other emotional distress, damage to her reputation, diminished job opportunities, and in other respects, all in an amount yet to be determined.

44. Defendant failed to make good faith efforts to enforce policies to prevent age discrimination against their employees, including Plaintiff.

45. Defendant's conduct was willful, wanton and malicious, and showed complete indifference to or conscious disregard for the rights of Plaintiff under Title VII, thus justifying an award of punitive damages in an amount sufficient to punish the Defendant and to deter them from like conduct in the future.

46. Plaintiff has already incurred and will incur in the future substantial attorney's fees and expenses in prosecuting this action, which fees and expenses are recoverable from Defendant under Title VII.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant and requests an award of her actual damages as is fair and reasonable, in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00), including but not limited to her lost wages and benefits, with interest through the date of trial, damages for "garden-variety" emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, loss of self-esteem, humiliation and other non-pecuniary losses, damages for future loss of wages, punitive damages, all costs including reasonable attorneys' fees, equitable relief as appropriate, including but not limited to a injunction restraining Defendant from future discriminatory actions, and any such other relief as the Court deems just and proper.

## COUNT III - RETALIATION IN VIOLATION OF TITLE VII

47. Plaintiff incorporates by reference the allegations of paragraphs 1 through 46 above.

48. Plaintiff had a good faith, reasonable belief that the Defendant was engaging in unlawful employment practices, including violations of laws prohibiting sex discrimination, and she reported her opposition to these unlawful practices to Defendant.

49. Defendant retaliated against Plaintiff because of her opposition to their unlawful employment practices in the terms and conditions of her employment, including but not limited to, by treating Plaintiff differently than employees who did not oppose unlawful employment practices, by failing to take prompt and appropriate corrective actions to remedy their conduct that Plaintiff reported to Defendant was unlawful, by treating Plaintiff differently than younger male employees, by failing to take prompt and appropriate corrective actions to remedy their conduct that Plaintiff reported to Defendant was unlawful, by denying her promotions, by demoting her to a non-Op Tech position for which she was qualified, and revoking her certification as an Op Tech.

50. Plaintiff's opposition to the Defendant's unlawful employment practices was a contributing and/or motivating factor in their decision to retaliate against her in the terms and conditions of her employment.

51. The Defendant failed to make good faith efforts to enforce policies to prevent discrimination and retaliation against its employees, including Plaintiff.

52. As a direct and proximate result of the Defendant's continuing patterns an practice of illegal retaliation directed toward her or disparate treatment of her and of the Defendant's demotion of her, Plaintiff has suffered actual damages in the form of lost wages,

loss of earning capacity, loss of career opportunity, pain and suffering, mental anguish, "garden-variety" emotional distress, loss of enjoyment of life, humiliation, upset and other emotional distress, damage to her reputation, diminished job opportunities, and in other respects, all in an amount yet to be determined.

53. The Defendant's retaliatory conduct was willful, wanton and malicious, and showed complete indifference to or conscious disregard for the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish the Defendant and to deter them from like conduct in the future.

54. Plaintiff has already incurred and will incur in the future substantial attorney's fees and expenses in prosecuting this action, which fees and expenses are recoverable from Defendant under Title VII.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant and requests an award of her actual damages as is fair and reasonable, in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00), including but not limited to her lost wages and benefits, with interest through the date of trial, damages for "garden-variety" emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, loss of self-esteem, humiliation and other non-pecuniary losses, damages for future loss of wages, punitive damages, all costs including reasonable attorneys' fees, equitable relief as appropriate, including but not limited to a injunction restraining Defendant from future discriminatory actions, and any such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury in the United States District Court for the Western District of Missouri on all counts and allegations in this Complaint.

By _/s/ Adriana Wheeler_
ADRIANA WHEELER
8024 S.W. 4th Street
Blue Springs, Missouri 64014
Phone: 816-832-6948
hap.2007@hotmail.com

PRO SE PLAINTIFF